**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CAPITAL HEALTH SYSTEM, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**EROL VEZNEDAROGLU**, *et al.*,<br><br>Defendants. | Civil Action No. 15-8288 (MAS)(LHG)<br><br><br><br>**ORDER DENYING<br>MOTION TO FILE<br><u>THIRD AMENDED COMPLAINT</u>** |

I. INTRODUCTION

This matter comes before the Court by way of a motion filed by Plaintiff Capital Health System, Inc. ("CHS") seeking leave to amend its complaint (the "Motion") [Docket Entry No. 213], in support of which it filed a brief ("Plaintiff's Brief in Support") [Docket Entry Nos. 214, 215].[1] Oppositions to the Motion were filed by Defendant Drexel University ("Drexel") ("Drexel Opposition") [Docket Entry Nos. 219, 221] and Defendants Mandy Binning, M.D.; Gerald Eckhardt, M.D.; Global Neurosciences Institute ("GNI"); Zakaria Hakma, M.D.; Kenneth Liebman, M.D.; Vikas Rao; and Erol Veznedaroglu, M.D. ("Veznedaroglu") (together, the "GNI Defendants") ("GNI Defendants' Opposition") [Docket Entry Nos. 218, 220]. CHS filed a reply brief ("CHS Reply") [Docket Entry Nos. 222, 223]. Drexel requested leave to file a sur-reply brief [Docket Entry Nos. 224, 228], which CHS opposed [Docket Entry Nos. 225, 226, 227], and the Court granted [Docket Entry No. 230]; ("Drexel Sur Reply") [Docket Entry Nos. 231, 233]. CHS requested leave to respond to Drexel's sur-reply brief. [Docket Entry Nos. 234, 235]. The Court

---

[1] Many of the documents were filed under seal, with redacted versions on the public docket. The references to multiple docket entries reflect both filings. Here, Docket Entry No. 214 is the sealed brief in support of the motion, and Docket Entry No. 215 is the redacted brief in support of the motion.

1

granted CHS's request [Docket Entry No. 236], and CHS promptly filed its brief ("CHS Sur Reply") [Docket Entry Nos. 237, 238].

The Court has considered the parties' submissions without oral argument, pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1(b). For the reasons set forth below, the Motion to Amend is DENIED.

## II. BACKGROUND[2]

CHS is a non-profit health system that operates the Capital Institute for Neurosciences, a "nationally recognized and fully accredited center for advanced neuroscience care." Second Amended Complaint ¶¶25-26 [Docket Entry No. 101]. Beginning in 2008, CHS operated a toll-free phone number ("Transfer Hotline") that allowed regional physicians to connect to CHS's on-call neurosurgeon, who would arrange for the patient's transfer to CHS. *Id.* ¶¶38-43. In 2008, CHS also hired Veznedaroglu, a neurosurgeon. *Id.* ¶¶2, 49.

In 2014, Veznedaroglu left CHS to create GNI, an independent medical practice that would service CHS as well as other health care systems. February 27, 2017 Opinion granting in part and denying in part Plaintiff's motion to dismiss at 4, 5 ("Feb. 27 Opinion") [Docket Entry No. 123].[3] In 2015, CHS entered into individual agreements with some of the GNI Defendants for on-call services. *Id.* at 6; Second Amended Complaint ¶¶20, 44. CHS also rented some of its facility to GNI. Second Amended Complaint ¶166. The rental agreement ended in February 2016, at which time GNI and Drexel opened the Drexel Neurosciences Institute. *Id.* ¶¶166-167.

---

[2] For the purposes of this decision, the Court assumes the parties' familiarity with the factual background of this case and therefore includes only the facts pertinent to the decision.
[3] In his February 27, 2017 Opinion denying Defendants' motion to dismiss, Judge Shipp set forth a comprehensive iteration of the facts of this case, some of which is relied upon here.

CHS alleges that upon Veznedaroglu's termination, Drexel and the GNI Defendants improperly solicited CHS employees, listed CHS as one of Drexel's neurosurgery practice locations, and misappropriated the Transfer Hotline. *Id.* ¶¶83-84, 93-110. CHS alleges that the GNI Defendants breached their on-call agreements with CHS, and that some of the GNI Defendants breached their employment agreements with CHS. *Id.* ¶¶111-119, 150-170. CHS further alleges that before and after Veznedaroglu's employment with CHS officially terminated, he competed with CHS and interfered with its contractual relationships. *Id.* ¶¶142-149, 171-179.

On November 24, 2015, CHS filed the original Complaint against Veznedaroglu, Drexel, and GNI, alleging false advertising, breach of contract, disloyalty, unfair competition, tortious interference, conversion, conspiracy, and unjust enrichment. [Docket Entry No. 1]. One month later, CHS filed its First Amended Complaint. [Docket Entry No. 15]. On June 17, 2016, after being granted leave to amend, it filed a Second Amended Complaint that added the remaining GNI Defendants. [Docket Entry No. 101].[4]

Drexel and the GNI Defendants filed a motion to dismiss CHS's Second Amended Complaint. [Docket Entry Nos. 104, 107]. On February 27, 2017, Judge Michael A. Shipp granted the motion to dismiss only as to CHS's conversion claim. Feb. 27 Opinion at 20-21.

An Amended Pretrial Scheduling Order, entered April 18, 2017, gave the parties until July 28, 2017 to file any further requests for leave to amend the pleadings, until December 31, 2017 to complete all fact discovery, and until April 30, 2018 to complete expert discovery. [Docket Entry

---

[4] On April 8, 2016, GNI, Veznedaroglu and some of the GNI Defendants filed a complaint against CHS, Stroke and Cerebrovascular Center of New Jersey, and Alireza Maghazehe, encaptioned *Global Neuroscience Institute, LLC, et al. v. Capital Health Systems, Inc., et al.*, Civil Action No. 16-1972 (the "2016 Action"). The 2016 Action alleged violations of the Lanham Act and the federal and New Jersey Racketeer Influence and Corrupt Organization Acts, as well as unfair competition, breach of contract, conversion, tortious interference, false light, and libel claims. The 2016 Action was promptly consolidated with the present matter.

No. 136]. Later amended pretrial scheduling orders were entered [Docket Entry Nos. 144, 148, 155, 180, 188, 197, 204, 232], but no party requested an extension of the deadline to amend the pleadings. The final fact discovery deadline expired November 30, 2018. [Docket Entry No. 232].

On August 18, 2017, GNI produced its first set of documents to CHS. Declaration of Thomas S. Biemer [Docket Entry Nos. 218-1, 220-1], Ex. 1. CHS claims that three of the documents produced are relevant to the present motion: the "Vision Document," a brochure created by Veznedaroglu and GNI's Don Damico envisioning a dedicated neurosciences hospital; a November 26, 2015 email from Veznedaroglu sending the Vision Document to an investor; and a September 22, 2015 email from Veznedaroglu to Liebman stating, in part, "we also need to empty CHS." Declaration of Anthony Argiropoulos [Docket Entry Nos. 214-1, 215-1], ("Argiropoulos Dec."), Exs. C, E, H.

A March 28, 2018 subpoena required non-party ECG Management Consultants ("ECG") to produce to CHS various documents and communications between or concerning the GNI Defendants. Argiropoulos Dec., Ex. A. ECG responded on April 25, 2018, and included in its response were two emails CHS claims are relevant to the present motion: an October 3, 2015 email between Veznedaroglu, GNI, and ECG, in which GNI's Don Damico says "[w]e are aggressively moving patients away from Capital;" and a November 30, 2015 email between Veznedaroglu, GNI, and ECG in which Veznedaroglu mentions the possibility of a bid to take over CHS. Argiropoulos Dec., Exs. F, I; Declaration of John F. Stoviak [Docket Entry Nos. 219-1, 221-1], ("Stoviak Dec."), Ex. 4.

On June 8, 2018, CHS submitted a letter to the Court alerting it to the newly discovered evidence about Defendants' scheme to take over CHS's Hopewell campus. Stoviak Dec., Ex. 1. The letter stated that the newly obtained documents raise new claims and that CHS "intends to

move for leave to file an amended complaint." Stoviak Dec., Ex. 1 at 5. On June 22, 2018, the Court held a telephone conference with counsel, at which time CHS reiterated the significance of the newly obtained documents and its intention to file a motion to amend the complaint.

CHS re-deposed Drexel's Jill Tillman on October 9, 2018, and GNI's Don Damico on October 18, 2018. Argiropoulos Dec., Exs. D, G. Those depositions also form the basis of CHS's proposed amendments to its complaint.

CHS filed the present Motion on May 28, 2019, seeking leave to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in light of newly discovered evidence. *See* Motion. Its proposed amendments are for the most part based on the three documents obtained from GNI in discovery in August 2017, the two emails obtained in April 2018 from ECG in response to CHS's subpoena, and the two depositions taken in October 2018. Argiropoulos Dec., Exs. B, C, D, E, F, G, H, I. CHS seeks to add RICO wire fraud claims, alleging that GNI and Veznedaroglu used email to fraudulently procure the Transfer Hotline and discuss a fraudulent scheme to destroy Capital's neurosurgical program, that GNI and Veznedaroglu drafted and emailed the Vision Document to defraud potential investors, that GNI and Veznedaroglu used the Transfer Hotline to defraud physicians and patients, and that Drexel and Veznedaroglu operated a website that made fraudulent claims about CHS. Argiropoulos Dec., Ex. B. CHS also seeks to add a RICO conspiracy claim, alleging that Drexel conspired with Veznedaroglu by appointing Veznedaroglu as Director of Drexel Neurosciences Institute knowing that he was engaged in a criminal enterprise, and that GNI conspired with Veznedaroglu by providing him with the resources to accomplish his criminal enterprise. *Id.*

The parties have completed fact and expert discovery. The deadline for the filing of dispositive motions was October 11, 2019; that deadline was adjourned by letter order dated

5

October 4, 2019, pending a decision on this Motion. [Docket Entry Nos. 232, 245.] Counsel for Drexel and the GNI Defendants stated on a September 23, 2019 telephone conference that if the motion to amend were granted, Defendants would need to reopen fact discovery as to the new claims and that additional time would also be needed to update their summary judgment motions, which had already been drafted.

### III. ARGUMENTS OF THE PARTIES

#### A. CHS

CHS argues that it should be granted leave to add RICO claims based on evidence it gathered through non-party subpoenas, and that it should not be prejudiced by Drexel and the GNI Defendants' failure to produce these new documents in discovery. Plaintiff's Brief in Support at 1-2. In support of its amendment, CHS relies upon the three documents produced by the GNI Defendants in August 2017, two of the documents produced by non-party ECG in April 2018, and the two depositions taken in October 2018. Argiropoulos Dec., Exs. B, C, D, E, F, G, H, I. CHS's Reply Brief references several additional documents that support their proposed amendments, including another two emails produced by non-party ECG in April 2018, but none of the additional documents change the timeline. Declaration of Thomas Kane [Docket Entry Nos. 222-1, 223-1], Exs. B, C, D, E, F, G.

Analyzing the requirements of Federal Rule of Civil Procedure 15 ("Rule 15"), CHS argues that it is not acting with undue delay or in bad faith and that amending will not be futile or cause unfair prejudice. Plaintiff's Brief in Support at 15-16. According to CHS, these new facts, specifically Defendants' intent to acquire CHS's Hopewell campus, only came to light after CHS filed its Second Amended Complaint and only through its diligent efforts in pursuing non-party subpoenas. *Id.* at 17; CHS Reply at 4-9. Defendants will suffer no unfair prejudice because CHS

6

requires no additional discovery, and Defendants already possess all the information about their fraudulent scheme. Plaintiff's Brief in Support at 17-18. Finally, because the proposed amendments state a viable RICO claim, CHS argues that the amendment is not futile.

In its Reply Brief, CHS analyzes the requirements of Federal Rule of Civil Procedure 16 ("Rule 16") and argues that it meets the good cause requirement because but for Defendants' discovery misconduct, CHS would have known about Defendants' scheme earlier and been able to timely amend its complaint to include the RICO claims. CHS Reply at 5-9. It further argues that after its June 8, 2018 letter alerting the Court to the newly discovered evidence and its intention to request leave to file an amended complaint, this Court found good cause to amend the scheduling order to permit additional discovery on the new RICO issue; thus good cause has been established. *Id.* at 9-10. CHS also points to the June 8, 2018 letter to argue that it put Defendants on notice about the forthcoming RICO claims, so Defendants cannot now claim prejudice if they failed to conduct discovery on that issue. *Id.* at 9-10. Finally, CHS argues that discovery does not need to be reopened because CHS has all of the discovery it needs to amend its complaint and any additional discovery is in the hands of Defendants, and CHS's expansion of the dates of alleged misconduct from mid-2015 to February 22, 2016 is *de minimis*. *Id.* at 12-15.

### B. The GNI Defendants

The GNI Defendants oppose CHS's Motion and argue that CHS cannot satisfy the requirements of either Rule 16 or Rule 15. Regarding Rule 16, CHS cannot show good cause because some of the new evidence on which it relies was in its possession for twenty-one months, and the balance was in its possession for thirteen months, long before it requested leave to amend. GNI Defendants' Opposition at 15-16. CHS's June 8, 2018 letter to the Court about its potential new RICO claims proves that it knew about those new claims, yet waited a year to raise them. By

then, fact discovery was closed and the parties had served expert reports; this defeats the diligence requirement of Rule 16. *Id.* at 16-17.

Regarding Rule 15, the GNI Defendants argue that the significant amount of time CHS spent sitting on its new evidence and its failure to explain the delay violate the prohibition on undue delay of Rule 15. *Id.* at 17-18. Amending now would prejudice the GNI Defendants because they would have to reopen fact discovery to explore the bases of the new RICO claims and the changed timing of the alleged fraudulent scheme, and to re-depose CHS executives. *Id.* at 19-23. According to the GNI Defendants, this would also require reopening expert discovery. *Id.* Finally, GNI asserts that amendment would be futile because, most glaringly, CHS does not articulate any injury caused by Defendants' alleged fraudulent activity. *Id.* at 25-26. The new claims only state that Defendants attempted to fraudulently convert the Transfer Hotline, to cause CHS to default on its mortgage, and to take over the Hopewell site, but there are no allegations that these attempts came to fruition. *Id.* at 25-29. GNI Defendants argue in the alternative that if the Court does allow CHS to amend its pleadings, CHS should be required to bear the costs of additional discovery, which would be extensive. *Id.* at 30.

### C. Drexel

Drexel also opposes CHS's request for leave and argues that CHS cannot meet the requirements of either Rule 16 or Rule 15. The diligence requirement of Rule 16 cannot be met because the documents upon which CHS's amendment relies were in CHS's possession for over a year before it requested leave to amend; CHS's June 8, 2018 letter to the Court proves that CHS was aware of the implications nearly a year before it acted. Drexel Opposition at 12-15.

Drexel argues that CHS's Motion must fail under Rule 15 because it is the result of undue delay and bad faith, and the amendment would be futile and would unfairly prejudice Drexel. *Id.*

8

at 16. Drexel says CHS sat on new evidence for more than a year, indeed, almost two years with regard to some documents, and CHS was well aware of the implications of these documents since at least June 2018. *Id.* at 16-18. Given CHS's misrepresentations about Drexel's involvement in the alleged conspiracy, in light of the evidence that exonerates Drexel, and that CHS admits that the late-produced documents were only in the possession of GNI and ECG, Drexel asserts that the motion against it has been brought in bad faith. *Id.* at 19-21. Drexel would be prejudiced by the amendment because it would have to re-depose fact witnesses regarding the elements of the new RICO claims. *Id.* at 22-23. Finally, the new amendments are futile because CHS has not pled a RICO claim against Drexel, only against the GNI Defendants. *Id.* at 23-31.

In its Sur Reply, Drexel advances a new argument that the documents CHS claims Drexel should have produced were not in fact responsive to CHS's requests to Drexel: CHS never requested emails or correspondence related to efforts to take over CHS, and none of its other discovery requests would have captured this new evidence. Drexel Sur Reply at 1-2.

## IV. LEGAL STANDARD

Leave to amend a pleading is generally governed by Rule 15, which allows a party to amend once as a matter of course within a specified time. Fed R. Civ. P. 15(a)(1). After that period has passed, a party may amend only with written consent of the adverse party or with leave of court. Fed. R. Civ. P. 15(a)(2). Once the period for amendment under Rule 15 has expired, the Court must look to Rule 16 to determine whether there is good cause to extend that Rule 15 deadline. This Motion requires consideration of both Rule 15 and Rule 16.

When a party seeks to amend outside of the scheduled time frame, the request is first analyzed under the more stringent Rule 16 requirement. *See Sang Geoul Lee v. Won Il Park*, 720

F. App'x 663, 669 (3d Cir. 2017) ("the lenient Fed. R. Civ. P. 15(a)(2) standard that '[t]he court should freely give leave when justice so requires' yields to the good cause requirement"); *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) ("where . . . a scheduling order governs amendments to the complaint . . . the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b)"); *Korrow*, 300 F.R.D. at 220 ("Only once the party has shown sufficient 'good cause' to amend the Rule 16 Order to extend the deadline will the Court evaluate the proposed amendment under Rule 15(a)").

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Good cause depends on the diligence of the moving party. *Lasermaster Int'l Inc. v. Neth. Ins. Co.*, Civ. No. 15-7614, 2018 WL 1891474, *10 (D.N.J. April 20, 2018). A court must determine whether the movant possessed, or through diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline's expiration. *Id*. A lack of prejudice to the non-moving party is not enough to constitute good cause under Rule 16. *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014). A Magistrate Judge has the discretion to decide what kind of showing the moving party must make to satisfy Rule 16(b)(4)'s good cause requirement. *Phillips*, 2006 U.S. Dist. LEXIS 78419, at *15 (internal citations omitted).

If the moving party can satisfy the requirements of Rule 16, the request for leave must still meet the requirements of Rule 15. Requests for leave under Rule 15 are liberally granted. *See Prince v. Aiellos*, No. 09-5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012). Amendments should be denied only where the court finds "undue delay, bad faith, dilatory motive, unfair prejudice or futility of amendment." *See WHY ASAP, LLC v. Compact Power*,

461 F.Supp. 2d 308, 311 (D.N.J. 2006) (*citing Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002)).

Under Rule 15, delay alone is insufficient to deny a request for leave to amend, *see Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d. Cir. 1984), but the moving party "must demonstrate that its delay in seeking to amend is satisfactorily explained." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks omitted). Courts will deny such a request where delay becomes undue, when its accommodation creates an "unwarranted burden on the court…[and] unfair burden on the opposing party." *Adams*, 739 F.2d at 868.

Similarly, prejudice must rise to such a level that the non-moving party would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Harrison*, 113 F.R.D. at 468 (internal quotations omitted). In evaluating the extent of any alleged prejudice, the court looks to the hardship on the non-moving party if the amendment were granted. *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." *Id.* Prejudice to the non-moving party "is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." *Harrison Beverage*, 133 F.R.D. at 469. Incidental prejudice, however, is not a sufficient basis for denial of an amendment. *Id.* A court may seek to mitigate the potential prejudice to the non-moving party by granting the amendment but limiting the permissible scope of future discovery. *See e.g.*, *In re: Facebook Privacy Litig.*, No. C-10-02389-RMW, 2015 WL 632329, at *3 (N.D. Cal. Feb. 13, 2015) (granting motion to amend but limiting future discovery).

## V. ANALYSIS

### A. Rule 16 Analysis

Because the time to amend under Rule 15 has already expired, the Court begins its analysis under Rule 16. Under Rule 16, a party needs to show good cause, frequently referred to as diligence, in seeking leave to amend. Only if this standard has been met does the Court move on to an analysis under Rule 15.

A critical consideration under Rule 16 is whether CHS acted with diligence in pursuing its proposed amendments. In order to understand and evaluate CHS's diligence, or lack thereof, a timeline of the underlying events is useful to put the issues in perspective:

- November 24, 2015: CHS files its Complaint;

- December 23, 2015: CHS files its First Amended Complaint;

- June 17, 2016: CHS files its Second Amended Complaint;

- July 28, 2017: deadline to file any further motions to amend the pleadings;

- August 18, 2017: GNI produces documents to CHS that include several of the documents relevant to the proposed Third Amended Complaint;

- April 25, 2018: ECG produces documents to CHS in response to a subpoena, including several documents relevant to the proposed Third Amended Complaint;

- June 8, 2018: CHS files a letter with the Court stating that it intends to seek leave to amend based on evidence of the GNI Defendants' intent to take over CHS;

- June 22, 2018: telephonic conference during which CHS again says that it had newly discovered evidence produced by a non-party that shows GNI Defendants'

intent to take over CHS and that it intends to move for leave to amend its Second Amended Complaint to add new counts;

- July 18 and August 20, 2018: the Court enters amended pretrial scheduling orders, both prepared by CHS, with no extension of the deadline to file a motion to amend the pleadings;

- October 9 and 18, 2018: Depositions of Jill Tillman and Don Damico;

- November 19, 2018: after a telephonic conference at which CHS does not raise the issue of amendment, the Court enters another amended pretrial scheduling order, again with no extended deadline to file a motion to amend the pleadings;

- November 30, 2018: final deadline for completion of fact discovery;

- December 12 and 18, 2018, and January 11, 2019: in-person and telephonic status conference with no reference to amending the pleadings;

- January 16, 2019: the Court enters an amended pretrial scheduling order, again with no extended deadline to file a motion to amend the pleadings;

- March 15, 2019: CHS sends a letter to Judge Shipp stating that the parties were on schedule;

- April 8, 2019: final deadline for production of affirmative expert reports;

- May 2, 2019: telephonic conference during which Plaintiff requested leave to amend its Second Amended Complaint, which the Court granted;

- May 28, 2019: CHS filed the present Motion.

The timeline puts CHS's arguments to the test and shows that CHS did not act with appropriate diligence. Specifically, CHS argues that because it did not have the relevant evidence to add RICO claims at the time it filed its Second Amended Complaint in June 2016, it could not

13

have brought these new claims at the time of its last amendment. Plaintiff's Brief in Support at 16-17. It also argues that it could not have amended its complaint again before the July 2017 deadline because it had not yet received the evidence to support the new RICO claims. CHS Reply at 5. Yet glaringly absent from CHS's briefs is an explanation as to why it sat on this new evidence for thirteen months, in some cases twenty-one months, before filing a motion to amend the pleadings.

CHS cannot claim that it only recently appreciated the value of these documents. In its June 8, 2018 letter to this Court, CHS stated that based on newly discovered evidence, it "intends to move for leave to file an amended complaint." Stoviak Dec., Ex. 1 at 5. In a June 22, 2018 telephonic conference CHS reiterated its intent, and this Court instructed CHS to file the appropriate motion for leave. There were numerous conferences and amended pretrial scheduling orders after that [Docket Entry Nos. 180, 188, 197, 204]; at any point, CHS could have requested an extended deadline to file its motion, but did not. Further, in its March 15, 2019 letter to Judge Shipp, CHS made no mention of planning to amend its complaint. [Docket Entry No. 208.] Instead, it stated that it anticipated being able to satisfy the governing pretrial scheduling order [Docket Entry No. 204], which required all fact discovery to be completed by November 30, 2018 and affirmative expert reports to be served by April 1, 2019.

CHS also argues that good cause exists because Defendants concealed evidence of their fraudulent behavior in discovery, and CHS had to seek out documents from third parties to uncover Defendants' RICO violations. CHS Reply at 4-5. That argument is also belied by the timeline. Even if the Court accepts as true that the GNI Defendants and Drexel withheld the critical documents, which Defendants vehemently deny, even by CHS's own count, it had that information

by June 22, 2018 at the latest, when it advised the Court in the telephonic conference that it wanted leave to amend its pleadings.

A party seeking to amend pleadings is "required to diligently seek amendments when they acquired enough facts to support such amendments." *Nissen v. Roza*, Civ. No. 08-5563, 2011 WL 5240833, at *24 (D.N.J. Oct. 31, 2011). *See, e.g.*, *Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (finding no abuse of discretion where District Court denied motion to amend complaint filed six months after the deadline expired given absence of good cause and unexplained delay); *Roggio v. FBI*, Civ. No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011) (finding no good cause where the plaintiff failed to amend complaint with facts known long before leave to amend was sought).

Here, although CHS did not obtain the relevant evidence until after the June 28, 2017 deadline to amend the pleadings, it sat on the evidence for an inexplicable amount of time. By the time CHS filed this Motion, the parties had completed fact discovery and already served affirmative expert reports. Without some explanation as to why CHS waited as long as it did, and after critical discovery deadlines had passed, CHS has not demonstrated good cause. *See Fermin v. Toyota Material handling, U.S.A., Inc.,* Civ. No. 10-3755, 2012 WL 1393074, *15-17 (D.N.J. April 23, 2012) (holding that even though the new relevant evidence was discovered after the deadline to amend the pleadings, the plaintiff still failed to act diligently to use the newly acquired information); *Phillips v. Greben*, Civ. No. 04-5590, 2006 WL 3069475, *14-16 (D.N.J. Oct. 27, 2006) (upholding the Magistrate Judge's denial of a motion to amend because although there was no deadline to amend the pleadings, "it was certainly clear that any possibility to amend the pleadings would expire when discovery closed"). Accordingly, the Motion must be denied for failure to meet the good cause standard under Rule 16.

### B. Rule 15 Analysis

Even if CHS were able to vault the threshold of Rule 16, it still cannot meet the requirement of Rule 15 that it demonstrate a lack of undue delay, bad faith or dilatory motives, that the amendment would not be futile, and that the amendment would not prejudice the other party. *Parker*, 447 Fed. Appx. at 337. Although "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied[,] . . . at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

In determining whether there is undue delay, a court must "focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier." *Id.* As stated above, considering the extent of CHS's delay and the absence of an explanation as to why it took so long to add these new claims, the delay is patently undue.

Regarding the prejudice to Defendants, CHS argues there will be no prejudice because it does not need any more discovery, while Drexel and GNI Defendants argue that they would in fact need to reopen fact discovery as to the new claims. GNI Defendants' Opposition at 18-23; Drexel Opposition at 22-23. "The prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (N.J.D. 1990).

Here, while CHS's proposed RICO conspiracy claim is similar to the existing conspiracy claim pled in the Second Amended Complaint, some of CHS's wire fraud claims are based on new facts. For example, one of CHS's new claims is that the Vision Document defrauded investors. Argiropoulos Dec., Ex. B. The role of investors in any capacity, especially as the victims of fraud,

was not previously raised in the Second Amended Complaint and would require additional discovery.

Finally, allowing amendment now would create an unwarranted burden on the Court. The original Complaint was filed in November 2015. [Docket Entry No. 1.] After the Complaint was amended as of right, CHS was granted leave to amend a second time in June 2016. [Docket Entry Nos. 99, 101.] Discovery deadlines were extended thereafter on seven occasions. [Docket Entry Nos. 136, 144, 148, 155, 180, 188, 197, 204.] Granting CHS's motion would require reopening and extending the discovery deadlines yet again, and it would also require extending the deadline for dispositive motions, all of which further protracts this ongoing litigation.

Accordingly, the Motion is denied, both under Rule 16 as well as Rule 15. Given the finding of undue delay and prejudice to Defendants, as well as the increased burden on the Court from the proposed amendments, this Court need not address the issue of futility.

### VI. CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS** on this **26th** day of **November, 2019**,

**ORDERED** that CHS's Motion to Amend [Docket Entry No. 213] is hereby **DENIED**.

_____
LOIS H. GOODMAN
United States Magistrate Judge